IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| INDELPRO S.A. DE C.V.,<br>    Plaintiff,<br><br>vs<br><br>VALERO MARKETING AND SUPPLY COMPANY, *in personam*<br><br>    Defendant, | C.A. No. ____ |

## **PLAINTIFFS' COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW plaintiff, Indelpro S.A. de C.V. ("Indelpro"), by and through its attorneys, Holland & Knight LLP, and file their complaint against Valero Marketing and Supply Company ("Valero"), and would respectfully show as follows:

## **JURISDICTION**

1. This is an action arising out of the manufacture, sale, supply and delivery of a parcel of marine fuel ("bunkers") by Valero to Plaintiff Indelpro the ultimate purchaser and user of the bunkers.

2. This is a matter within the subject matter jurisdiction of this Court within the meaning of 28 U.S.C. §1332, in that it is a dispute between Indelpro, Mexican corporation headquartered in Mexico and Valero, a Delaware corporation headquartered in Texas for an amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

3. This Court also has, as an independent basis for jurisdiction over the subject matter of this action under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 as Plaintiff asserts claims for maritime tort and a breach of maritime contract arising from the sale and supply of bunkers to Indelpro for consumption by the vessel M/V Zoe Schulte. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's non-maritime claims to the extent that they are so related to the maritime claims that they form part of the same case or controversy.

4. Indelpro is a company organized under the laws of Mexico with offices at Boulevard Petrocel KM 0.5, Colonia Puerto Industrial Altamira, Altamira, TM 89603, Mexico.

5. Upon information and belief, Valero is a company organized under the laws of Delaware with a principal place of business at one Valero Way, San Antonio, Tx 78249.

6. Venue is proper in the District pursuant to 28 U.S.C. § 1391(b)(1).

## JURY TRIAL

7. Plaintiff demands a jury.

## FACTUAL BACKGROUND

8. At all relevant times, Indelpro is the time charterer of the M/V Zoe Schulte, (Official No. 9675078) (the "Vessel").

9. Valero is a manufacturer, seller, and supplier of marine fuel with operations worldwide, and specifically in Texas. Valero during the period of January 1, 2018, through May 31, 2018, directly or indirectly sold, supplied and/or delivered thousands of metric tons of bunkers which were contaminated, off-spec, unfit for consumption and capable of causing

2

serious physical damage to main propulsions systems, auxiliary engines and equipment of vessels consuming such fuel.

10. Upon information and belief, the fuel manufactured by Valero during this time period was delivered to more than 150 vessels both directly by Valero in Texas and through intermediary sellers and suppliers in other U.S. ports and elsewhere around the globe and such fuel was distributed through normal distribution channels for Valero's marine fuel. The fuel manufactured, sold, distributed and delivered by Valero was specifically made for and known to be consumed by vessels.

11. The claims by Plaintiff set forth herein are not unique to Plaintiff and numerous other fuel purchasers and vessels consuming such product have suffered similar physical and economic losses from Valero's contaminated, off-spec and defective fuel. The effects of the contaminated marine fuel manufactured and sold into the market by Valero from January 1, 2018, to May 31, 2018, have been well documented and include, vessel breakdowns, engine and machinery malfunctions and damage and economic loss suffered in the form of vessel delays, loss opportunities, and discharge of the contaminated product.

12. The contamination issues were known to Valero early on and Valero itself refused to purchase its own product for use on vessels chartered by Valero.

13. Valero, despite having actual knowledge that the product it manufactured and sold into the market beginning January 1, 2018, through May 31, 2018, was contaminated, defective and off-spec and would cause physical harm if consumed by vessel, internally refused to buy and consume Valero's own product but never notified end users and purchasers of the known defects

3

nor took any steps to mitigate the known physical harm that would occur to vessels using the product by issuing a recall notice or facilitating the discharge and buyback of such fuel.

14. On or about March 20, 2018, Indelpro ordered marine fuel for the M/V Zoe Schulte from Valero. The order was arranged through Indelpro's agent Unigas International, and broker LQM Petroleum Services, LLC. Specifically, Indelpro ordered 360 metric tons of FO 380 CST RMG 380 at a price of $334 USD per metric ton (the "Bunkers"), and 360 metric tons of MGO DMA at a price of $565 USD per metric ton. A copy of the order confirmation confirming Indelpro's order dated March 20, 2018 is attached here to as Exhibit A (the "Order Confirmation").

15. The Order Confirmation does not incorporate any terms and conditions.

16. The Order Confirmation provides that the marine fuel ordered by Indelpro would meet specification standards pursuant to ISO 8217:2010(E).

17. Pursuant to the Order Confirmation, the marine fuel ordered by Indelpro was to be delivered to the Vessel at Bolivar Roads, Texas, between March 24 and March 27, 2018.

18. Valero delivered the marine fuel to the Vessel on March 26, 2018, by barge while the Vessel was at anchor at Bolivar Roads, Texas. In total, Valero delivered to the Vessel 330 metric tons of FO 380 CST RMG 380 and 360 metric tons of MGO DMA.

19. After delivery of Bunkers to the Vessel was complete, Valero issued to the Vessel a Bunkering Certificate. A copy of the Bunkering Certificate issued to the Vessel by Valero is attached here to as Exhibit B.

20. The Vessel did not immediately begin using the Bunkers after they were delivered.

21. On or about May 28, 2018, the Vessel was using the Bunkers when the Vessel began experiencing serious operational issues. The operational issues were related to the use of the Bunkers.

22. As a result of using the Bunkers, the Vessel sustained physical damage to its engines and engine components. In addition, the contaminated fuel coated fuel pipes and storage tanks on the Vessel which in and of itself constituted physical damage to the Vessel.

23. Indelpro arranged to have samples of the Bunkers taken at the time of delivery tested and analyzed by an independent laboratory.

24. The analysis of the samples showed that the Bunkers did not meet the specifications set forth in ISO 8217:201(E) and that the Bunkers were unsuitable and unsafe to use.

25. Furthermore, the Bunkers failed to meet the basic international standard for marine fuel pursuant to MARPOL annex VI section 18.1, in that the Bunkers were not fit to be used and were dangerous to the Vessel.

26. Indelpro notified Valero and third party broker LQM that the fuel sold and delivered by Valero to the Vessel was contaminated, off-spec and unsuitable for consumption and demanded that Valero arrange to have the contaminated Bunkers removed from the Vessel. Valero, ignored such reasonable requests by Plaintiff.

27. On about December 30, 2018, through January 2, 2019, Indelpro arranged to have the unused off-spec and contaminated Bunkers remaining on board removed from the Vessel in Bolivar Roads, Texas. Indelpro subsequently had to clean the Vessel's fuel tanks that had held

the off-spec and contaminated Bunkers so that the Vessel could safely load fresh marine fuel into those tanks.

28.  As a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel suffered physical damage to its fuel tanks, piping, fuel system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determine by this Court.

29.  Furthermore, as a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel's operations were disrupted and delayed, causing Indelpro damages in an amount that may be finally determined by this Court.

30.  Indelpro further sustained damages and incurred costs related to removing the unused Bunkers from the Vessel and cleaning the Vessel's fuel tanks, piping, and fuel system.

## **Count I - Breach of Contract**

31.  Plaintiff Indelpro repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

32.  Valero and Indelpro formed a contract for the sale of the Bunkers.

33.  Valero breached that contract by delivering to the Vessel bunkers that were contaminated, defective and off-spec and were not suitable for use.

34.  As a direct result of Valero's breach of contract, the Vessel suffered physical damage to its fuel tanks, fuel system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determined by this Court.

35. As a direct result of Valero's breach of contract, the Vessel's operations were disrupted and delayed causing increased operational costs, lost opportunities, and further causing Indelpro damages in an amount that may be finally determined by this Court.

36. Furthermore, as a direct result of Valero's breach of contract, Indelpro sustained damages and incurred costs for removing the off-spec Bunkers from the Vessel and the lost value of Bunkers purchased in an amount that may be finally determined by this Court.

37. The amount of Indelpro's damages resulting from Valero's breach of contract may be finally determined by this Court, but are at a minimum in excess of $75,000.

### Count II – Breach of Warranties

38. Plaintiff Indelpro repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

39. The Order Confirmation confirming Indelpro's order of the Bunkers from Valero specifically and expressly warranted that the Bunkers would meet the standards and specifications for marine fuel set forth in ISO 8217.2010(E).

40. Valero further expressly represented and warranted that the Bunkers were compliant with MARPOL annex VI section 18.1.

41. The Bunkers Valero sold to Indelpro and delivered to the Vessel were off-spec and dangerous to use. The Bunkers did not meet the standards and specifications for marine fuel set forth in ISO 8217.2010(E) or MARPOL annex VI section 18.1.

42. By delivering to the Vessel marine fuel that did not meet the standards and specifications for marine fuel set forth in ISO 8217.2010(E), Valero breached an expressed warranty.

43. Furthermore, the Bunkers were defective, not suitable for use, dangerous, and did not reasonably conform the an ordinary buyer's expectations. As such, Valero breached the implied warranties of fitness and merchantability.

44. As a direct result of Valero's breach of warranty, the Vessel suffered physical damage to its fuel tanks, fuel system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determined by this Court.

45. As a direct result of Valero's breach of warranty, the Vessel's operations were disrupted and delayed causing increased operational costs, lost opportunities, and further causing Indelpro damages in an amount that may be finally determined by this Court.

46. Furthermore, as a direct result of Valero's breach of warranty, Indelpro sustained damages and incurred costs for removing the off-spec Bunkers from the Vessel and the lost value of Bunkers purchased in an amount that may be finally determined by this Court.

47. The amount of Indelpro's damages resulting from Valero's breach of warranty may be finally determined by this Court, but are at a minimum in excess of $75,000.

## Count III -Negligence

48. Plaintiff Indelpro repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

49. As a physical supplier of marine fuel, Valero had a duty to provide to the Vessel marine fuel that was suitable and safe for use, and not off-spec or contaminated.

50. Valero breached this duty by delivering to the Vessel marine fuel that was off-spec, contaminated, unsuitable, unsafe, and which did not conform with applicable specifications and regulations.

51. As a direct result of Valero's breach of duty, the Vessel suffered physical damage to its fuel tanks, fuel system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determined by this Court.

52. As a direct result of Valero's breach of duty, the Vessel's operations were disrupted and delayed causing increased operational costs, lost opportunities, and further causing Indelpro damages in an amount that may be finally determined by this Court.

53. Furthermore, as a direct result of Valero's breach of duty, Indelpro sustained damages and incurred costs for removing the off-spec Bunkers from the Vessel and the lost value of Bunkers purchased in an amount that may be finally determined by this Court.

54. The amount of Indelpro's damages resulting from Valero's breach of duty may be finally determined by this Court, but are at a minimum in excess of $75,000.

## Count IV – Product Liability

55. Plaintiff Indelpro repeats and realleges each and every allegation set forth in the proceeding paragraphs as if fully set forth herein.

56. Valero is the manufacture and seller of marine fuel, and specifically the Bunkers that were provided to the Vessel that are the subject of this complaint.

57. The Bunkers Valero manufactured, sold, and provided to Indelpro were inherently defective, off-spec, contaminated, unsuitable, unsafe, and did not conform with applicable specifications and regulations.

58. As a direct result of the inherent defect of the Bunkers manufactured, sold, and provided to Indelpro by Valero, the Vessel suffered physical damage to its fuel tanks, fuel

system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determined by this Court.

59. As a direct result of the inherent defect of the Bunkers manufactured, sold, and provided to Indelpro by Valero, the Vessel's operations were disrupted and delayed causing increased operational costs, lost opportunities, and further causing Indelpro damages in an amount that may be finally determined by this Court.

60. As a direct result of the inherent defect of the Bunkers manufactured, sold, and provided to Indelpro by Valero, Indelpro sustained damages and incurred costs for removing the off-spec Bunkers from the Vessel and the lost value of Bunkers purchased in an amount that may be finally determined by this Court.

61. The damages suffered by Indelpro were all foreseeable to Valero as the manufacture, seller, and supplier of the Bunkers.

62. The amount of Indelpro's damages resulting from the inherent defect of the Bunkers manufactured, sold, and provided to Indelpro by Valero may be finally determined by this Court, but are at a minimum in excess of $75,000.

**Prayer for Relief**

Wherefore, Plaintiff Indelpro demands judgment against Defendant Valero as follows:

(i)  Enter judgment in favor of Plaintiff Indelpro against Defendant Valero for damages as may be finally determined by this Court together with interest, reasonable attorneys' fees and costs; and

(ii)  That the Court grant such other and further relief as may be just and proper in the circumstances.

Date:  March 25th, 2019

    Respectfully submitted,

    HOLLAND & KNIGHT LLP

    s/ James H. Power

    James H. Power
    State Bar No. 24026397
    Fed ID No. 433050
    James.power@hklaw.com

    Holland & Knight LLP
    1100 Louisiana Street Suite 4300
    Houston, Tx 77002

    -and-

    31 West 52nd Street
    New York, NY

    *Attorney for Plaintiff Indelpro S.A. de C.V.*