UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| INDELPRO S.A. DE C.V., | § | |
| | § | |
| VS. | § | C.A. NO. 3:19-CV-00116 |
| | § | |
| VALERO MARKETING AND SUPPLY | § | |
| COMPANY, *in personam* | § | |

**DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, AND
THIRD-PARTY COMPLAINT AGAINST TRAFIGURA TRADING LLC**

Defendant / Third-Party Plaintiff Valero Marketing and Supply Company ("Valero"), through its attorneys, Blank Rome LLP, files this Answer and Affirmative Defenses to Plaintiff Indelpro S.A. De C.V.'s ("Indelpro") Complaint (the "Complaint"), and concurrently, a Third-Party Complaint against Third-Party Defendant Trafigura Trading LLC ("Trafigura") pursuant to Fed. R. Civ. P. 14(a). Valero respectfully avers upon information and belief as follows:

**ANSWER TO INDELPRO'S COMPLAINT**

Valero responds to each individual paragraph of Indelpro's Complaint upon information and belief as follows:

1. Valero admits that it sold and supplied, and delivered a parcel of marine fuel ("bunkers") to Indelpro, the ultimate purchaser and user of the bunkers. Except as admitted, Valero denies the remaining allegations of Paragraph 1.

2. Valero admits the allegations in Paragraph 2.

3. Valero admits the allegations of Paragraph 3.

4. Valero denies the allegations of Paragraph 4 for lack of sufficient information to justify a belief therein.

5. Valero admits the allegations of Paragraph 5.

6. Valero admits that venue is proper in the Southern District of Texas. However, the contractual agreement between the parties obligated Indelpro to assert its claim within the exclusive jurisdiction of the state or federal courts located in Harris County, Texas.

7. The allegations of Paragraph 7 require no response from Valero. To the extent a response is required, Valero denies that Indelpro is entitled to a jury trial based upon the facts and claims presented.

8. Valero denies the allegations of Paragraph 8 for lack of sufficient information to justify a belief therein.

9. Valero admits the allegations of Paragraph 9 that it is a seller and supplier of marine fuel in Texas and other areas. Except as admitted, denied.

10. Valero denies the allegations of Paragraph 10 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

11. Valero denies the allegations of Paragraph 11 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

12. Valero denies the allegations of Paragraph 12 for lack of sufficient information to justify a belief therein. To the extent a response is required, denied.

13. Valero denies the allegations of Paragraph 13.

14. Valero admits the allegations of Paragraph 14.

15. Valero denies the allegations of Paragraph 15.

16. The allegations of Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Valero denies the allegations of Paragraph 16 for lack of information sufficient to justify a belief therein, and otherwise refers to the terms of the Order Confirmation, which are self-evident.

17. Valero admits the allegations of Paragraph 17.

18. Valero admits the allegations of Paragraph 18.

19. Valero admits the allegations of Paragraph 19.

20. Valero denies the allegations of Paragraph 20 for lack of information sufficient to justify a belief therein.

21. Valero denies the allegations of Paragraph 21 for lack of information sufficient to justify a belief therein. To the extent a response is required, denied.

22. Valero denies the allegations of Paragraph 22 for lack of information sufficient to justify a belief therein. To the extent a response is required, denied.

23. Valero denies the allegations of Paragraph 23 for lack of information sufficient to justify a belief therein.

24. The allegations of Paragraph 24 state legal conclusions to which no response is required. To the extent a response is required, denied.

25. The allegations of Paragraph 25 state legal conclusions to which no response is required. To the extent a response is required, denied.

26. Valero denies the allegations of Paragraph 26 for lack of information sufficient to justify a belief therein.

27. Valero denies the allegations of Paragraph 27 for lack of information sufficient to justify a belief therein.

28. Valero denies the allegations of Paragraph 28.

29. Valero denies the allegations of Paragraph 29.

30. Valero denies the allegations of Paragraph 30.

141517.06535/119343993v.2

31. In response to Paragraph 31 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

32. Valero admits the allegations of Paragraph 32.

33. Valero denies the allegations of Paragraph 33.

34. Valero denies the allegations of Paragraph 34.

35. Valero denies the allegations of Paragraph 35.

36. Valero denies the allegations of Paragraph 36.

37. Valero denies the allegations of Paragraph 37.

38. In response to Paragraph 38 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

39. The allegations of Paragraph 39 state legal conclusions to which no response is required. To the extent a response is required, denied.

40. The allegations of Paragraph 40 state legal conclusions to which no response is required. To the extent a response is required, denied.

41. The allegations of Paragraph 41 state legal conclusions to which no response is required. To the extent a response is required, denied.

42. The allegations of Paragraph 42 state legal conclusions to which no response is required. To the extent a response is required, denied.

43. The allegations of Paragraph 43 state legal conclusions to which no response is required. To the extent a response is required, denied.

44. Valero denies the allegations of Paragraph 44.

45. Valero denies the allegations of Paragraph 45.

46. Valero denies the allegations of Paragraph 46.

**47.** Valero denies the allegations of Paragraph 47.

**48.** In response to Paragraph 48 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

**49.** The allegations of Paragraph 49 state legal conclusions to which no response is required. To the extent a response is required, denied.

**50.** Valero denies the allegations of Paragraph 50.

**51.** Valero denies the allegations of Paragraph 51.

**52.** Valero denies the allegations of Paragraph 52.

**53.** Valero denies the allegations of Paragraph 53.

**54.** Valero denies the allegations of Paragraph 54.

**55.** In response to Paragraph 55 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

**56.** Valero admits that it was the seller of the Bunkers that were provided to the Vessel that is the subject of this Complaint. Except as admitted, denied.

**57.** Valero denies the allegations of Paragraph 57.

**58.** Valero denies the allegations of Paragraph 58.

**59.** Valero denies the allegations of Paragraph 59.

**60.** Valero denies the allegations of Paragraph 60.

**61.** Valero denies the allegations of Paragraph 61.

**62.** Valero denies the allegations of Paragraph 62.

**63.** Valero denies the allegations of Paragraph 63 and also the claim for damages contained within the un-numbered "prayer" paragraph following Paragraph 63.

**First Affirmative Defense**

Indelpro's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Valero incorporates by response herein the content of Paragraphs 1 through 63 above as well as its Third-Party Complaint below in support of this affirmative defense.

**Second Affirmative Defense**

Valero denies that Indelpro is entitled to any relief against it, whether as prayed for or otherwise.

**Third Affirmative Defense**

If Indelpro was damaged, which damages are not admitted but expressly denied, then such damages were caused by the sole negligence or other legal fault of Indelpro or third parties for whom Valero is not responsible.

**Fourth Affirmative Defense**

If Indelpro was damaged, which damages are not admitted but expressly denied, then the acts or omissions of third parties for whom Valero is not responsible were the legal, sole, proximate, intervening, superseding and/or new and independent cause of the damages alleged, if any.

**Fifth Affirmative Defense**

If Indelpro was damaged, which damages are not admitted but expressly denied, then such damages were caused by and/or arose as a result of the unseaworthiness and/or other defective conditions of the Vessel that is the subject of this lawsuit, in whole or in part, for which Valero is not responsible.

141517.06535/119343993v.2

**Sixth Affirmative Defense**

If Indelpro was damaged, which damages are not admitted but expressly denied, then Indelpro has failed to mitigate its damages, and they should be barred or reduced accordingly.

**Seventh Affirmative Defense**

Valero pleads as a defense the terms and conditions as set forth in the sales contract at issue dated March 19, 2018 and bearing Valero Sales Contract Confirmation No. 40587855 (the "Valero Contract"), which in turn incorporates Valero's "*General Terms and Conditions For Petroleum Product Purchases and Sales, 2014 Edition*" ("Valero GT&Cs") and Valero's "*Marine Provisions, 2017 Edition,*" ("Valero Marine Provisions"), all of which are incorporated herein verbatim. Valero specifically invokes as an affirmative defense the warranties, notice provisions, waivers, choice of law and jurisdiction, limitations of liabilities, and liquidated damages / limitation clauses set forth in the Valero Contract, Valero GT&Cs, and Valero Marine Provisions.

**Eighth Affirmative Defense**

Indelpro's damages are barred by release, contractual limitation, estoppel and/or waiver.

**Ninth Affirmative Defense**

If Indelpro was damaged, which damages are not admitted but expressly denied, then such damages are barred by the doctrine of laches and/or all applicable statutes of limitations.

**Tenth Affirmative Defense**

Indeplro is not entitled to a jury trial in this matter.

**THIRD-PARTY COMPLAINT AGAINST TRAFIGURA TRADING LLC**

Valero Marketing and Supply Company, now as Defendant/Third-Party Plaintiff, without waving any rights, defenses or affirmative defenses, brings the following Third-Party Complaint

against Third-Party Defendant Trafigura pursuant to Fed. R. Civ. P. 14(a) and alleges upon information and belief as follows:

## I. Jurisdiction and Venue

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333 and an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h). Alternatively, this Court has diversity jurisdiction under 28 U.S.C. §1332(a).

2. Supplemental jurisdiction for this Third-Party Complaint also exists under 28 U.S.C. § 1367 because this Third-Party Complaint against Trafigura is so related to the claims asserted in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391.

## II. The Parties

4. Defendant / Third-Party Plaintiff Valero is a Delaware Company with its principal place of business in San Antonio, Texas.

5. Third-Party Defendant Trafigura is upon information and belief a business entity with its principal place of business in Houston, Texas. Among other things, Trafigura was at all times relevant herein a manufacturer, as that term is defined under Texas Civil Practice & Remedies Code § 82.001(4), who placed certain products or component parts thereof into the stream of commerce as described below.

6. Indelpro is upon information and belief a foreign business entity with its principal place of business in Mexico.

7. The M/V ZOE SCHULTE ("Vessel") is upon information and belief a Vessel that was chartered, operated and/or otherwise controlled by Indelpro at all times herein.

8. Unigas International B.V ("Unigas") was upon information and belief acting as Indelpro's disclosed agent for purposes of assisting Indelpro with ordering bunker fuels for the Vessel. Unigas is referenced in this Third-Party Complaint for factual background purposes only.

9. LQM Petroleum Services, LLC ("LQM") was upon information and belief and acting as Indelpro's disclosed agent for purposes of assisting Indelpro with ordering bunker fuels for the Vessel. LQM is referenced in this Third-Party Complaint for factual background purposes only.

### III.   Factual Background

10. Valero is, among other things, engaged in the business of selling and distributing marine bunker fuels.

11. In February 2018, Valero entered into an agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 1") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 1 was stored in Trafigura's storage tank T-200-8 at the BOSTCO tank farm facility located in La Porte, Texas (the "BOSTCO Facility"). In accordance with the agreement, on or about Feb. 23, 2018, Trafigura Fuel Oil Parcel 1 (constituting approximately 20,483 barrels) was transferred from Trafigura Storage Tank T-200-8 into Valero Receiving Tank 50-7 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 1 (or portions thereof) was later shifted from Valero Receiving Tank 50-7 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

141517.06535/119343993v.2

12. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 2") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 2 was stored in Trafigura's storage tank T-200-11 at the BOSTCO Facility. In accordance with the agreement, on or about March 2, 2018, Trafigura Fuel Oil Parcel 2 (constituting approximately 38,536 barrels) was transferred from Trafigura Storage Tank T-200-11 into Valero Receiving Tank 50-7 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 2 (or portions thereof) was later shifted from Valero Receiving Tank 50-7 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

13. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 3") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 3 was stored in Trafigura's storage tanks T-200-8 and T-200-11 at the BOSTCO Facility. In accordance with the agreement, on or about March 3, 2018, Trafigura Fuel Oil Parcel 3 (constituting approximately 1,505 barrels) was transferred from Trafigura Storage Tanks T-200-8 and T-200-11 into Valero Receiving Tank 50-8 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 3 (or portions thereof) was later shifted from Valero Receiving Tank 50-8 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

141517.06535/119343993v.2

14. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 4") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 4 was stored in Trafigura's storage tanks T-200-8 and T-100-11 at the BOSTCO Facility. In accordance with the agreement, on or about March 4, 2018, Trafigura Fuel Oil Parcel 4 (approximately 54,883 barrels) was transferred from Trafigura Storage Tanks T-200-8 and T-100-11 into Valero Receiving Tank 320-2 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 4 was later shifted from Valero Receiving Tank 320-2 to other Valero Tanks within the BOSCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

15. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 5") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 5 was stored in Trafigura's storage tank T-50-4 at the BOSTCO Facility. In accordance with the agreement, on or about March 9, 2018, Trafigura Fuel Oil Parcel 5 (approximately 2,319 barrels) was transferred from Trafigura Storage Tanks T-50-4 into Valero Receiving Tank 320-3 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 5 was later shifted from Valero Receiving Tank 320-3 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

141517.06535/119343993v.2

16. On or about March 19, 2018, Valero entered into Valero Sales Contract Confirmation No. 40587855 (the "Valero Contract") for the sale of certain quantities of bunker fuel (the "Valero Bunker Fuel") to the Vessel.

17. Upon information and belief, on or before March 2019, some or all of Trafigura Fuel Oil Parcels 1-5 (now collectively referred to as the "Trafigura Fuel Oil") had made their way through the various Valero tanks at the BOSTCO Facility to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

18. The Valero Bunker Fuel (which contained the Trafigura Fuel Oil) was delivered to the Vessel on or about March 26, 2018 in the port of Houston, Texas by way of transfer from Buffalo 302 and thereafter from that barge to the Vessel.

19. Indelpro has claimed in its Original Complaint at Paragraph 20 as follows:

> *The Vessel did not immediately begin using the Bunkers after they were delivered.*

20. Indelpro has further claimed in its Original Complaint at Paragraph 21 as follows:

> *On or about May 28, 2018, the Vessel was using the Bunkers when the Vessel began experiencing serious operational issues. The operational issues were related to the use of the Bunkers.*

21. Indelpro has further claimed in its Original Complaint at Paragraph 22 as follows:

> *As a result of using the Bunkers, the Vessel sustained physical damage to its engines and engine components. In addition, the contaminated fuel coated fuel pipes and storage tanks on the Vessel which in and of itself constituted physical damage to the Vessel.*

22. Indelpro has further claimed in its Original Complaint at Paragraph 23 as follows:

> *Indelpro arranged to have samples of the Bunkers taken at the time of delivery tested and analyzed by an independent laboratory.*

23. Indelpro has further claimed in its Original Complaint at Paragraph 24 as follows:

> *The analysis of the samples showed that the Bunkers did not meet the specifications set forth in ISO 8217:201(E) and that the Bunkers were unsuitable and unsafe to use.*

**24.** Indelpro has further claimed in its Original Complaint at Paragraph 25 as follows:

> *Furthermore, the Bunkers failed to meet the basic international standard for marine fuel pursuant to MARPOL annex VI section 18.1, in that the Bunkers were not fit to be used and were dangerous to the Vessel.*

**25.** Indelpro has further claimed in its Original Complaint at Paragraph 27 as follows:

> *On about December 30, 2018, through January 2, 2019, Indelpro arranged to have the unused off-spec and contaminated Bunkers remaining on board removed from the Vessel in Bolivar Roads, Texas. Indelpro subsequently had to clean the Vessel's fuel tanks that had held the off-spec and contaminated Bunkers so that the Vessel could safely load fresh marine fuel into those tanks.*

**26.** Indelpro has further claimed in its Original Complaint at Paragraph 28 as follows:

> *As a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel suffered physical damage to its fuel tanks, piping, fuel system, and to its engines and engine components, causing Indelpro damages in an amount that may be finally determine by this Court.*

**27.** Indelpro has further claimed in its Original Complaint at Paragraph 29 as follows:

> *Furthermore, as a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel's operations were disrupted and delayed, causing Indelpro damages in an amount that may be finally determined by this Court.*

**28.** Indelpro has further claimed in its Original Complaint at Paragraph 30 as follows:

> *Indelpro further sustained damages and incurred costs related to removing the unused Bunkers from the Vessel and cleaning the Vessel's fuel tanks, piping, and fuel system.*

**29.** Valero was without fault in causing and/or contributing to the damages asserted in Indelpro's Original Complaint. The contamination of the Valero Bunker Fuel was legally caused solely by the acts, omissions, or other conduct of Trafigura, or by its breaches of

the applicable contracts with Valero and/or negligent acts or failures to act. The source of all damages, costs, and expenses incurred by Indelpro is Trafigura's provision of unsuitable, substandard, defective, contaminated, unfit, nonconforming, and/or off-specification product, i.e., the Trafigura Fuel Oil.

IV. **First Cause of Action – Breach of Contract**

30. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 29 as if fully set forth herein.

31. Valero and Trafigura were parties to contracts for the sale of the Trafigura Fuel Oil Parcels referenced above. By virtue of its contracts with Valero, Trafigura agreed to provide the Trafigura Fuel Oil to Valero, and the Trafigura Fuel Oil was required to provide fuel oil that was not unsuitable, substandard, defective, contaminated, unfit, nonconforming, and/or off-specification.

32. Valero performed all of the obligations required of it under the various contracts at issue between Valero and Trafigura with respect to the purchase of the Trafigura Fuel Oil Parcels.

33. However, Trafigura provided the Trafigura Fuel Oil to Valero in a condition that, unbeknownst to Valero, was out of specification, unsuitable, substandard, defective, and/or contaminated, all in breach of the contract between Valero and Trafigura for the purchase of the Trafigura Fuel Oil.

34. The foregoing acts or failures to act as contracted by Trafigura proximately caused significant damages and loss to Valero. Valero hereby seeks recovery of all damages, costs, expenses, interest, and attorneys' fees that have been or may be incurred as a result of Trafigura's contractual breaches.

141517.06535/119343993v.2

35. To the extent Valero may be held liable to Indelpro and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from third-party defendant Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

V. **Second Cause of Action – Negligence**

36. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 35 as if fully set forth herein.

37. Trafigura's sale and provision of the Trafigura Fuel Oil to Valero in a condition that was out of specification, unsuitable, substandard, defective, and/or contaminated constitutes negligence. Trafigura owed a duty to Valero to act non-negligently by providing suitable, non-contaminated Trafigura Fuel Oil, and to ensure the Trafigura Fuel Oil met all industry-standards, was suitable for its intended use, was not defective, and not contaminated. Trafigura's failure to do so was negligent and its breach of its duty proximately caused damages to Valero and, in turn, Indelpro and the Vessel and other related expenses.

38. Valero seeks recovery of all damages, costs, and expenses that have been or may be incurred as a result of Trafigura negligent conduct as outlined above.

39. To the extent Valero may be held liable to Indelpro and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

VI. **Third Cause of Action – Breach of Express Warranties, Implied Warranties, and Implied Warranty of Fitness for a Particular Purpose**

40. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 39 as if fully set forth herein.

41. Valero purchased the Trafigura Fuel Oil from Trafigura in exchange for certain express and implied warranties and representations with respect to the quality and characteristics of the Trafigura Fuel Oil, which Trafigura knew or should have known were for the particular purpose of serving as fuel oil for Valero's downstream bunker fuel products and customers. The representations and warranties were part of the benefit of the bargain as set forth in the Valero – Trafigura contracts referenced above. The Trafigura Fuel Oil did not comply with the representations and warranties agreed to by Trafigura, and Valero has since suffered damages and loss as a result of the breach of warranties.

42. The alleged contamination was caused in whole or in part by the acts, omissions, fault, negligence, want of due care, failure to warn, product defect, improper packaging, improper handling and/or breach of warranty of third-party defendant Trafigura including, but not limited to, its failure to exercise due care in the preparation and delivery of the Trafigura Fuel Oil.

43. As a direct and proximate result of third-party Trafigura's breach of the aforesaid representations and warranties, it is jointly and severally liable over to Indelpro for all of its alleged losses and damages.

44. Any loss and/or damage to Indelpro and its Vessel was due to the breach of warranties by Trafigura, who should be held directly liable over to Indelpro.

45. To the extent Valero may be held liable to Indelpro and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

141517.06535/119343993v.2

## VII. Fourth Cause of Action – Products Liability

46. Valero repeats and reasserts each and every allegation set forth above in Third-Party Paragraphs 1 through 45 as if fully set forth herein.

47. The alleged contamination was caused in whole or in part because Trafigura defectively designed and/or defectively manufactured the Trafigura Fuel Oil due to an error in the manufacturing process and/or failed to provide adequate warnings and/or instructions concerning the Trafigura Fuel Oil. These defects were a substantial factor in causing the alleged property damage injuries suffered by Indelpro.

48. As a direct and proximate result of Trafigura's defective design and/or defective manufacture and/or failure to provide adequate warnings and/or instructions concerning the Trafigura Fuel Oil, it is jointly and severally liable over to Indelpro for all of its losses and damages.

49. To the extent Valero may be held liable to Indelpro and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

## VIII. Fifth Cause of Action – Statutory Indemnity Against Trafigura Pursuant to Texas Civil Practice & Remedies Code § 82.002, *et. seq.*

50. Valero repeats and reasserts each and every allegation set forth above in Paragraphs 1 through 49 as if fully set forth herein.

51. Valero purchased all of the Trafigura Fuel Oil and added it into the Valero Bunker Fuel prior to the delivery of Valero Bunker Fuel to the Vessel on or about March 26, 2018.

52. Valero did not alter the Trafigura Fuel Oil in any way, did not cause or have knowledge of any adulteration or contamination within the Trafigura Fuel Oil, and Valero at all times

stored and handled the Trafigura Fuel Oil in the manner necessary to maintain its fitness for use.

53. Indelpro later filed the above-captioned lawsuit against Valero on March 25, 2019 in the United States District Court for the Southern District of Texas. A copy of Indelpro's Original Complaint is located at Docket No. 1 in the above-captioned matter, and is incorporated herein by reference.

54. Indelpro's lawsuit alleges, among other things, that Indelpro was injured by the Valero Bunker Fuel it purchased from Valero, which among other things allegedly caused physical damage to Indelpro's Vessel and its associated parts.

55. Valero's liability to Indelpro, if any, was solely due to the contaminated nature of the Trafigura Fuel Oil provided to Valero by Trafigura. Valero was and is not independently culpable for the defects in the Trafigura Fuel Oil.

56. Valero has or will suffer damages and loss as a result of Trafigura manufacturing and supplying Valero with the contaminated Trafigura Fuel Oil, including damages and losses stemming from the above-captioned action asserted by Indelpro against Valero.

57. Based on these facts, pursuant to Section 82.002 of the Texas Civil Practice and Remedies Code, Valero, as a seller, is entitled to indemnity as against Trafigura, the manufacturer of the Trafigura Fuel Oil, for any "loss," including court costs and other reasonable expenses, reasonable attorney's fees, and any reasonable damages, which Valero has incurred and will incur in defending against the underlying action asserted against Valero by Indelpro.

58. Valero has demanded defense and indemnity from Trafigura. Trafigura has ignored or refused to provide Valero with a defense or with indemnity. Therefore, Trafigura breached

18

its statutory duty to hold Valero harmless against the loss that Valero incurred in the underlying action.

**59.** Valero is entitled to indemnity from Trafigura, and for its expenses incurred in defending the action brought by NSCSA in the above-captioned matter, pursuant to Sections 82.001 et seq. of the Texas Civil Practices and Remedies Code.

## PRAYER

**WHEREFORE**, the premises considered, Valero Marketing and Supply Company requests that the Court enter an order or judgment finding:

(1) *<u>On Valero's Answer to Indelpro's Complaint</u>*: That Valero's Answer to Indelpro's Complaint be deemed good and sufficient and, that after due proceedings be had, there be judgment in favor of Valero dismissing Indelpro's claim, at Indelpro's cost, and that Valero be granted such other and further relief as equity and justice of the cause may require and permit.

(2) *<u>On Valero's Third-Party Complaint Against Trafigura</u>*: That judgment be entered in favor of Valero on its third-party complaint against Trafigura and award damages to Valero in the amount to be determined at trial, plus pre-judgment interest, costs and fees, and for such other and further relief as equity and justice of the cause may require and permit.

Houston, Texas

May 9, 2019

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Keith B. Letourneau*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Jeremy A. Herschaft
State Bar No. 24091970
Federal I.D. No. 1450990

Zachary J. Wyatte<br>
State Bar No. 24110556<br>
Federal I.D. No. 3350752<br>
717 Texas Avenue, Suite 1400<br>
Houston, Texas 77002<br>
Telephone: (713) 228-6601<br>
Facsimile:  (713) 228-6605<br>
kletourneau@blankrome.com<br>
jherschaft@blankrome.com<br>
zwyatte@blankrome.com

*Attorneys for Valero Marketing and Supply Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of May, 2019, I caused the foregoing to be electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jeremy A. Herschaft*
Jeremy A. Herschaft