**In the United States District Court
for the Southern District of Texas
Galveston Division**

| | |
|---|---|
| Indelpro S.A. DE C.V. <br> *Plaintiff,* <br> vs. <br><br> Valero Marketing and Supply Company, <br> *Defendant and Third-party Plaintiff* <br> vs. <br><br> Trafigura Trading LLC <br> *Third-party Defendant* | Civil Action No. 3:19-cv-00116 |

**TRAFIGURA TRADING LLC'S MOTION TO DISMISS CERTAIN CLAIMS
IN VALERO MARKETING AND SUPPLY COMPANY'S
THIRD-PARTY COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Third-Party Defendant Trafigura Trading LLC ("Trafigura") moves to dismiss certain of the claims in Valero Marketing and Supply Company ("Valero")'s Third-Party Complaint (Dkt. #5) on the grounds that those claims are subject to a valid, written arbitration clause. In support, Trafigura states as follows:

## I.  VALERO'S ALLEGATIONS AGAINST TRAFIGURA

In Paragraphs 11 through 15 of its Third-Party Complaint, Valero baldly alleges that Trafigura and Valero entered into five agreements in February 2018, under which Trafigura delivered five "parcels" of "fuel oil" to Valero.[1]  Valero identified in its Third Party Complaint no titles, no numbers, no specific dates, and no other identifiers of these alleged agreements. Valero attached none of the alleged agreements to its pleadings. Valero quoted none of the terms of the agreements allegedly breached.

---

[1] Valero's Answer and Affirmative Defenses to Plaintiff's Complaint, and Third-Party Complaint Against Trafigura Trading LLC (Dkt. #5) ("Third-Party Compl.") at ¶¶11-15.

Valero alleged that Trafigura transferred its product to Valero at LaPorte, Texas on five occasions in late February 2018 and early March 2018.[2]  Valero further alleged that the product delivered by Trafigura was added by Valero to "Valero's current stock of marine bunker fuel."[3]  Valero allegedly "later shifted" its marine bunker fuel to other Valero tanks, "eventually making its way" to a Valero barge, which Valero used to supply marine bunker fuel to its third-party customers.[4]  One such Valero customer was a vessel chartered by Plaintiff Indelpro S.A. DE C.V. ("Indelpro").[5]

Valero alleged that "upon information and belief, on or before March 2019…some or all of Trafigura Fuel Oil Parcels 1-5…had made their way" to the barge, after which the fuel was transferred to Indelpro's vessel.[6]  Valero does not allege that <u>all</u> of the fuel transferred to Indelpro's vessel came from Trafigura, only that the fuel delivered to Indelpro "contained" Trafigura's product.[7]  While Valero denies in its Answer that the "marine bunker fuel" it transferred to the Indelpro vessel was defective, its Third Party Complaint alleges that to the extent Valero's bunker fuel was defective, the defect was caused by Trafigura.[8]

Valero asserts five claims against Trafigura in its Third Party Complaint:  Count I (Breach of Contract); Count II (negligence); Count III (breach of warranty); Count IV (Products Liability); and Count V (Statutory Indemnity).[9]

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.* at ¶16.
[6] *Id.* at ¶¶17-18.
[7] *Id.* at ¶18.
[8] *Id.* at ¶29.
[9] *Id.* at pp.14-19.

## II.   A VALID, WRITTEN ARBITRATION CLAUSE REQUIRES VALERO'S THIRD-PARTY CLAIMS SUBJECT TO THAT CLAUSE BE DISMISSED.

Based on the information available to Trafigura to date, the five deliveries of product by Trafigura to Valero in LaPorte, Texas were made pursuant to three contracts between Valero and Trafigura.[10]  One of the written contracts contains a binding arbitration clause.  The other two written contracts contain an exclusive New York choice of jurisdiction clause.[11]  The claims asserted by Valero that are subject to the contract containing an arbitration clause should be dismissed from these proceedings.  Valero agreed both to arbitration and to the procedures Valero must follow to initiate an arbitration in New York City.

### A.   Federal Law Requires Enforcement of Arbitration Agreements.

The Federal Arbitration Act and subsequent federal authority interpreting the Act embody a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 (5th Cir. 2013); *Leblanc v. Epstein*, 2003 WL 24196892, at *9 (S.D. Tex. Aug. 7, 2003) (Rosenthal, J.) (summarizing law regarding "healthy regard for the federal policy favoring arbitration.").  Due to this "liberal policy," "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of

---

[10] Rule 12(d) provides that where a movant presents evidence outside the pleadings, the motion should be converted to a motion for summary judgment.  However, Rule 12(d) applies only to motions under Rule 12(b)(6) and Rule 12(c).  Because Trafigura moves pursuant to Rule 12(b)(3), the Court need not convert Trafigura's motion to a Rule 56 motion.

[11] Trafigura is moving separately to sever and transfer those claims.

waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  As the Supreme Court has observed, "[t]he preeminent concern of Congress in passing the [Federal Arbitration Act] was to enforce private agreements into which parties had entered," a concern which "requires that [courts] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, (1985).  "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Federal policy favoring arbitration applies even where, as here, it may lead to piecemeal litigation, as different parts of a dispute are litigated in different forums.  The Fifth Circuit explains:

> "We have anticipated that arbitration of a portion of a dispute will lead to duplicated efforts and inefficiency if the dispute, once arbitrated, must then be resolved in court with nonsignatory parties. ***But we have held that any inconvenience or duplication of effort is a consequence of having agreed to arbitrate***. Specifically, duplication of effort, redundant testimony, and the possibility of inconsistent findings ... are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain. ***The relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement***. This is so notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement, meaning that parties subject to arbitration will have to re-litigate issues with non-parties."

*The Rice Company (Suisse), S.A. v. Precious Flowers, Ltd.*, 523 F.3d 528, 540 (5th Cir. 2008).  Where parties to a "maritime transaction" agree to arbitrate their disputes, Section 2 of the Federal Arbitration Act specifically provides that such an agreement will be "valid, irrevocable, and enforceable."

**B.**     **A Valid Agreement to Arbitrate Existed Between Valero and Trafigura as to Claims Relating to Product Sales Under Contract No. 1654384**

Parties agree to arbitrate a dispute when:  (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of the arbitration clause.  *Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001);[12] *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998); *Wood v. PennTex Resources, L.P.*, 458 F. Supp. 2d 355, 361 (S.D. Tex. 2006) (Rosenthal, J.).  Here, both prongs are met.

While Valero failed to identify them in its pleadings, three contracts have been identified by Trafigura to date which cover the product delivered by Trafigura to Valero.  The documents comprising the three contracts are exhibits to the Affidavit of Amanda Samples ("Samples Aff."), attached hereto, and those three contracts are designated Contract No. 1654384, Contract No. 1659403, and Contract No. 1669270.[13]  Contract No. 1654384 contains an arbitration clause in Section 26, titled "Law and Jurisdiction."  The arbitration clause reads:

> "*ANY AND ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN THE PARTIES ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT* OR THE FORMATION, EXECUTION, BREACH OR TERMINATION THEREOF *SHALL BE EXCLUSIVELY SETTLED AND RESOLVED BY ARBITRATION CONDUCTED IN THE ENGLISH LANGUAGE IN THE CITY OF NEW YORK, STATE OF NEW YORK, USA*, IN ACCORDANCE WITH THE THEN CURRENT

---

[12] Each of the contracts between the parties contains a New York choice of law clause. *E.g.*, Ex. A-1 at Section 26 ("This contract shall be governed by, construed and enforced under the laws of the State of New York without giving the effect to its conflicts of laws principles.").  To the extent Valero argues Texas law applies, there is no reason to believe Texas law yields any different result.

[13] *See* Samples Aff.  The terms of the three contracts are found in Exhibit A-1, Exhibit A-3, and Exhibit A-5, respectively.  Exhibit A-1 contains the arbitration provision.  Exhibits A-3 and A-5 contain the exclusive choice of jurisdiction provision.

INTERNATIONAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION BEFORE A PANEL OF THREE ARBITRATORS."

As described in the attached Samples Affidavit, the parties agreed to the arbitration clause found in Contract No. 1654384. Trafigura sent its contract terms in writing to Valero, including the arbitration clause. Trafigura's proposed terms stated that no additional terms beyond those therein would apply.[14] Valero sent its written confirmation to Trafigura expressly agreeing to Trafigura's terms. Specifically, the Valero confirmation stated: "*Valero Marketing and Supply Company recognizes that Trafigura Trading LLC's Contract (the "Contract") governs this transaction*…."[15] Trafigura later delivered the product covered by Contract No. 1654384, which Valero accepted and paid for.[16]

Contract No. 1654384 selects New York law to govern the parties' contract. [17] In New York, arbitration agreements are governed by New York C.P.L.R. § 7501, which states that "[a] written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to

---

[14] The first page of Trafigura's proposed terms stated: "If the seller and…the buyer issue contracts for the above referenced deal, the seller's contract prevails…." Samples Aff. at Exs. A-1, A-3, and A-5. Trafigura's proposed terms stated in Section 30 that if "[a]dditional or different terms from those set forth herein shall be construed as proposals for amendments, and shall not become part of the contract unless expressly agreed to by seller…." *Id.* Section 28 of Trafigura's proposed terms also contained a strong merger clause, providing that this document "contains the entire agreement of both parties." *Id.*
[15] *Id.* at Exs. A-2, A-4, and A-6 (all at page one).
[16] *Id.* at ¶8.
[17] *Id.* at Exs. A-1, A-3, and A-5, each at Section 26 ("This contract shall be governed by, construed and enforced under the laws of the State of New York without giving effect to its conflicts of laws principles."). To the extent Valero contends Texas law applies to the issue of whether a valid agreement to arbitrate exists, Texas has also adopted UCC 2-207, so the arbitration agreement would be binding under Texas law as well.

enter judgment on an award." Courts have consistently interpreted this rule to require that an agreement to arbitrate be in writing but not necessarily be signed by the party to be bound. "[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature." *McAllister Brothers v. A&S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980).[18] The key issue "is not whether the [agreement] was signed by the party sought to be charged ... but whether there was a meeting of the minds of the parties as to the essential terms of the agreement, even though unsigned by one party." *A/S Custodia v. Lessin Int'l., Inc.*, 503 F.2d 318, 320 (2d Cir. 1974).

Moreover, New York has adopted Section 2-207 of the Uniform Commercial Code, which applies to the sale of goods.[19] Section 2.207(c) of the UCC provides that where, as here, the parties never applied a signature to a document constituting the contract, "conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale…." Here, the parties' "conduct…recognized the existence of a contract" because Trafigura delivered the product, and Valero accepted and paid for it. *See* Samples Aff. In such cases, "the terms of the particular contract [will] consist of ***those terms on which the writings of the parties agree***." *Id.* Because Valero's confirmation expressly

---

[18] *See also Washington Heights–West v. District 1199*, 748 F.2d 105, 107-09 (2d Cir. 1984) (arbitration can be enforced without a formally executed arbitration agreement if arbitration was the intent of the parties); *Royal Air Maroc v. Servair, Inc.*, 603 F. Supp. 836, 840-42 (S.D.N.Y. 1985) (even without a signed arbitration agreement, C.P.L.R. § 7501 can be satisfied by determining the intent of the parties and examining the integration of several documents).

[19] To the extent Valero argues that Texas law and not New York law applies, Texas has also adopted Section 2-207 of the UCC as part of its Business and Commerce Code.

agreed to Trafigura's proposed terms, Trafigura's terms, including the arbitration

provision, became the contract between Valero and Trafigura.[20]

**C.    The Arbitration Clause Applies to Valero's Third-Party Claims Against Trafigura Relating to Product Delivered Under Contract 1654384.**

To the extent this Court addresses the scope of the arbitration clause, federal law

governs. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991

F.2d 42, 48 (2d Cir. 1993); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077-78

(5th Cir. 2002).   The U.S. Supreme Court, Second Circuit, and Fifth Circuit have

characterized arbitration clauses mandating arbitration of "any dispute, controversy, or

claim arising out of or relating to", such as the one at issue here, as "broad."   *E.g.*, *Prima

Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967) (labelling as

"broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or

relating to this Agreement"); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16,

20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or

controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad

clause"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160,

164–65 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing

"[a]ny dispute ... arising out of or in connection with or relating to this Agreement," they

"intend the clause to reach all aspects of the relationship.").   The existence of a broad

arbitration clause creates a presumption of arbitrability which can be overcome only if it

---

[20] It is of no moment that Valero's confirmations proposed an additional set of "key provisions."   Because Trafigura's proposed terms stated that no additional terms would apply, under 2-207(b)(1), Trafigura's "offer expressly limit[ed] acceptance to the terms of the offer."   Hence, Valero's additional terms did not become part of the contract.

may be said "with positive assurance" that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute. *Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005).

Here, each of Valero's third-party claims against Trafigura concerning the product deliveries covered by Contract No. 1654384 "arise out of or relate" to that contract. As set forth above, Valero itself alleges in its Third Party Complaint that Trafigura sold its product to Valero in "parcels," which are controlled by "agreements," and the product caused damage to Indelpro for which Valero may be liable.[21] Hence, no matter whether Valero's third-party claims against Trafigura sound in contract, tort, warranty, or statutory indemnity, to the extent the claims "arise out of" or "relate to" the product delivered by Trafigura under Contract No. 1654384, all such claims are subject to the broad mandatory arbitration clause. *See Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 204 (S.D.N.Y. 2000) ("Moreover, the fact that the arbitration clause broadly encompasses '[a]ny controversy or claim arising out of or relating to this Agreement or breach thereof' belies Norcom's argument that the clause excludes tort claims collateral to the Distributor Agreement itself. Had Norcom wished to exclude such collateral claims from arbitration, it could have bargained for a narrower clause."); *see also Collins*, 58 F.3d 16, 23 (2d Cir. 1995) ("The mere fact that this is a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable.").

---

[21] Third-Party Compl. [Dkt. #5] at ¶¶11-18.

**D.      Those Claims Subject to the Valid Arbitration Clause Should Be Dismissed.**

Section 3 of the Federal Arbitration Act provides that where a suit is brought in a federal court that "upon any issue [is] referable to arbitration under an agreement in writing for such arbitration," a court shall "stay the trial of the action until such arbitration has been had…."  9 U.S.C. § 3.

Courts routinely hold, however, that as an alternative to a stay, if a party so requests, a court may dismiss a claim that is subject to a binding arbitration clause.  *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (stay must be granted if requested under Section 3 of FAA, but dismissal also appropriate if all issues raised are subject to arbitration).  While federal courts are divided about the proper mechanism to dismiss a claim subject to an arbitration clause, the Fifth Circuit has accepted Federal Rule of Civil Procedure 12(b)(3) as the appropriate mechanism.  *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) ("[O]ur court has treated a motion to dismiss based on [an arbitration clause] as properly brought under Rule 12(b)(3) (improper venue)").  Courts within the Second Circuit have at times treated 12(b)(1) and 12(b)(6) as the proper mechanism.  *Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 373 (S.D.N.Y. 2005) (treating motion to dismiss claims subject to arbitration clause as 12(b)(1) motion); *Color-Web, Inc. v. Mitsubishi Heavy Indus. Printing & Packaging Mach., Ltd.*, 2016 WL 6837156, at *3 (S.D.N.Y. Nov. 21, 2016) (treating motion to dismiss claims

subject to arbitration clause as 12(b)(6) motion).[22]  Trafigura contends that dismissal under Rule 12(b)(3) is appropriate.  To the extent the Court holds Rule 12(b)(1) or 12(b)(6) is appropriate, Trafigura urges, in the alternative, for dismissal under these Rules.

## III.    CONCLUSION

For the above reasons, to the extent Valero's third-party claims rely on product deliveries by Trafigura subject to Contract No. 1654384, Trafigura respectfully requests this Court dismiss such claims, as they are subject to a valid, written arbitration clause.

---

[22] *See also Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (Rule 12(b)(6) is proper mechanism).

DATED:  June 14, 2019

REED SMITH LLP

s/ *Stephen E. Scheve*
Stephen E. Scheve (attorney-in-charge)
Texas Bar No. 00794928
S.D. Tex. No. 18784
sscheve@reedsmith.com
Curtis R. Waldo
Texas Bar No. 24090452
S.D. Tex. No. 2331235
cwaldo@reedsmith.com
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: +1 713 469 3800
Facsimile: +1 713 469 3899

*Counsel for Third-party Defendant Trafigura Trading LLC*

## CERTIFICATE OF SERVICE

I certify that the above document was served via the Court's CM/ECF system to all counsel of record on June 14, 2019.

s/ *Stephen E. Scheve*
Stephen E. Scheve

- 12 -

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on June 3, 2019, counsel for Trafigura contacted counsel for Valero via telephone about the relief requested herein.  Valero requested Trafigura send Valero an email outlining the proposed motions.  On June 4, 2019, Trafigura sent an email to Valero outlining the proposed motions, including this motion.  Trafigura did not hear from Valero.  On June 5, 2019, Trafigura submitted a letter to the Court requesting a pre-motion conference, further outlining the proposed motions, including this motion.  Valero did not respond to Trafigura's letter.  At a pre-motion conference on June 10, 2019, Valero represented it was opposed to the relief sought herein.

I hereby certify that on June 4, 2019, counsel for Trafigura contacted counsel for Indelpro via email, outlining the proposed motions, including this motion.  On June 5, 2019, Indelpro called Trafigura and informed Trafigura that Indelpro did not know whether it was opposed or unopposed to Trafigura's motions.  On June 5, 2019, Trafigura submitted a letter to the Court requesting a pre-motion conference, further outlining the proposed motions, including this motion.  Indelpro did not respond to Trafigura's letter.  At a pre-motion conference on June 10, 2019, Indelpro represented it did not know whether it was opposed or unopposed to Trafigura's motions.


_s/ Curtis R. Waldo_____
Curtis R. Waldo